SYLLABUS

This syllabus is not part of the Court's opinion. It has been prepared by the Office of the Clerk for the convenience of the reader. It has been neither reviewed nor approved by the Court. In the interest of brevity, portions of an opinion may not have been summarized.

<u>G.A.-H. v. K.G.G.</u> (A-25/26-18) (081545)

Argued April 23, 2019 -- Decided June 26, 2019

FERNANDEZ-VINA, J., writing for the Court.

In this case, the Court considers whether defendant, "Arthur," was obligated to report that his co-worker "Kenneth" was engaged in a sexual relationship with a minor; whether their employer, GEM Ambulance, LLC (GEM), is vicariously liable for Arthur's failure to report; and whether GEM negligently retained, trained, or supervised Arthur or Kenneth.

Kenneth groomed plaintiff to trust him and began having sexual intercourse with her in September 2010, when she was fifteen and he was forty-four. When this illegal relationship was ongoing, Kenneth worked for GEM as an emergency medical technician (EMT). While Kenneth was working, he would sometimes park a GEM ambulance near plaintiff's bus stop and, from there, he would walk her to her bus stop. No other GEM EMT interacted with plaintiff on these occasions, and plaintiff's bus stop could not be seen from the GEM vehicle.

Kenneth often bragged to co-workers that he was in a "relationship," but he never identified plaintiff by her real name or age. Kenneth often stated various ages when telling his co-workers how old his "girlfriend" was, but he never mentioned an age below the age of consent. Kenneth and Arthur worked together on several shifts, during which Kenneth would show Arthur the pictures and videos of a naked female that Kenneth had on his phone. Arthur would quickly look away from Kenneth's phone, which was a "flip phone" with a small screen.

Kenneth's abuse of plaintiff ended in February 2011, when she informed her mother about her relationship with Kenneth. Plaintiff's mother notified the police of Kenneth's actions. Kenneth thereafter pled guilty to various criminal offenses.

Plaintiff filed suit against Kenneth, Arthur, and GEM, among others, in February 2015. Plaintiff claimed that Arthur should have reported Kenneth to supervisors at GEM and that GEM was vicariously liable for Arthur's failure to report Kenneth's conduct and also negligent in retaining, training, and supervising Arthur and Kenneth. The trial court entered default judgment against Kenneth. The trial court granted Arthur and GEM

1

summary judgment, holding that Arthur had no duty to report Kenneth and, moreover, that no facts created a reasonable basis for Arthur to believe Kenneth was engaged in a sexual relationship with a minor. The trial court further held that there was no basis for liability to attach to GEM.

The Appellate Division, however, vacated the trial court's grants of summary judgment and remanded for further development of the record because, in its view, "the common law does not necessarily preclude the imposition of" a duty to report that a co-worker is engaged in a sexual relationship with a minor and the record here was not sufficiently developed to determine whether Arthur knew of Kenneth's illicit sexual relationship with plaintiff. 455 N.J. Super. 294, 297-304 (App. Div. 2018).

The Court granted Arthur's and GEM's petitions for certification. 236 N.J. 103 (2018); 236 N.J. 101 (2018).

**HELD:** No reasonable trier of fact could find that Arthur knew or had special reason to know that Kenneth was engaged in a sexual relationship with a minor. Accordingly, Arthur had no duty to report Kenneth. The record similarly fails to provide a basis for liability to attach to GEM. Because the record here is determinative of Arthur's and GEM's liability, the Court need not decide whether a co-worker or employer with knowledge or a special reason to know that a co-worker or employee is engaged in a sexual relationship with a minor has a legal duty to report that co-worker or employee.

1. The fundamental elements of a negligence claim are a duty of care owed by the defendant to the plaintiff, a breach of that duty by the defendant, injury to the plaintiff proximately caused by the breach, and damages. Courts consider several factors when determining whether a duty of care is owed: fairness and public policy; foreseeability; the relationship between the parties; the nature of the conduct at issue; and the ability to alter behavior to avoid injury to another. When the duty at issue relates to the risk of harm created by a third party, the plaintiff must prove that the defendant knew or had reason to know of the risk of harm in question. (pp. 11-13)

2. Although tort law requires the creation of a risk of harm before a duty of care is imposed, tort law imposes vicarious liability, without personal fault, upon employers for certain acts of an employee under the doctrine of respondeat superior. For liability to attach to an employer under the doctrine of respondeat superior, the plaintiff must prove the existence of an employer-employee relationship and that the employee's tortious actions occurred within the scope of that employment. Unlike respondeat superior, negligent hiring, supervision, and training are not forms of vicarious liability and are based on the direct fault of an employer. (pp. 13-15)

3. The regulations relied on by plaintiff do not impose on Arthur a duty to report under the circumstances of this case. N.J.A.C. 8:40-3.7(a)(4) requires EMTs and others to

2

report "[a]ny instance where a crewmember acts outside of his or her approved scope of practice," but no such conduct was alleged here. And N.J.A.C. 8:40-3.7(a)(5)'s requirement that EMTs and others report, among other things, "any instances of child abuse or neglect" depends on the definition of child abuse set forth in Title 9, which is limited to conduct by the child's "parent, guardian, or other person having . . . custody and control" of the child. See N.J.S.A. 9:6-8.9. (pp. 15-16)

4. In J.S. v. R.T.H., the Court held that a spouse owes children sexually abused by her husband a duty of care "to take reasonable steps to prevent or warn of the harm" when she has "actual knowledge or special reason to know that her husband is abusing or is likely to abuse an identifiable victim." 155 N.J. 330, 342-43, 352 (1998). The plaintiff has pointed to the following facts to establish a duty of care for Arthur to report Kenneth: (1) Kenneth walked plaintiff to her bus stop; (2) Kenneth gave inconsistent accounts of the age of his "girlfriend" to co-workers; and (3) Kenneth showed Arthur pictures or videos of a naked female on his flip-phone. However, those facts do not establish that Arthur knew Kenneth was engaged in a sexual relationship with a minor -- nor do those facts establish a special reason for Arthur to know that Kenneth was engaged in a sexual relationship with a minor. Nothing in the record suggests that Arthur viewed any pictures or videos of plaintiff. (pp. 16-17)

5. Arthur does not owe a duty of care in this case. Because Arthur did not commit a tort, GEM cannot be held vicariously liable for his conduct. And the record does not adequately support plaintiff's claim for negligent retention, training, or supervision. Although plaintiff has pointed to various actions by Kenneth that occurred at work, the only tort in this case is Kenneth's off-duty abuse of plaintiff. (pp. 17-18)

**The judgment of the Appellate Division is REVERSED**.

**CHIEF JUSTICE RABNER and JUSTICES LaVECCHIA, ALBIN, PATTERSON, SOLOMON, and TIMPONE join in JUSTICE FERNANDEZ-VINA'S opinion.**

3

SUPREME COURT OF NEW JERSEY

A-25/26 September Term 2018

081545

G.A.-H.,

Plaintiff-Respondent,

v.

K.G.G.,

Defendant,

and

A.M.,

Defendant-Appellant,

and

GEM Ambulance, LLC,

Defendant-Appellant,

and

Lakewood S.C. United,

Defendant,

and

Monmouth Ocean Soccer Association a/k/a MOSA,
Jersey Shore Boca, and Jersey Shore Boca JR FC League,

Defendants.

1

On certification to the Superior Court,
Appellate Division, whose opinion is reported at
455 N.J. Super. 294 (App. Div. 2018).

Argued
April 23, 2019

Decided
June 26, 2019

Frances Wang Deveney argued the cause for appellant
A.M. (Marks, O'Neill, O'Brien, Doherty & Kelly,
attorneys; Frances Wang Deveney, of counsel and on the
briefs, and Shannon B. Adamson, on the briefs).

George R. Hardin argued the cause for appellant GEM
Ambulance, LLC (Hardin, Kundla, McKeon & Poletto,
attorneys; George R. Hardin, of counsel and on the briefs,
and Arthur A. Povelones, Jr., on the briefs).

Ramon M. Gonzalez argued the cause for respondent,
(Ramon M. Gonzalez, on the brief).

JUSTICE FERNANDEZ-VINA delivered the opinion of the Court.

In this case, we consider whether defendant A.M. (Arthur) was obligated to report that his co-worker K.G.G. (Kenneth) was engaged in a sexual relationship with a minor; whether their employer, GEM Ambulance, LLC (GEM), is vicariously liable for Arthur's failure to report; and whether GEM negligently retained, trained, or supervised Arthur or Kenneth.

Plaintiff was fifteen years old in September 2010 when Kenneth, who was then forty-four years old, began an illicit sexual relationship with her.

While that illegal relationship was ongoing, Kenneth and Arthur worked together for GEM as emergency medical technicians (EMTs). In her complaint, plaintiff alleged that Arthur should have reported Kenneth to supervisors at GEM and that GEM was both vicariously liable for Arthur's failure to report Kenneth's conduct and negligent in retaining, training, and supervising Arthur and Kenneth.

The trial court granted Arthur and GEM summary judgment, holding that Arthur had no duty to report Kenneth and, moreover, that no facts created a reasonable basis for Arthur to believe Kenneth was engaged in a sexual relationship with a minor. The Appellate Division, however, vacated the trial court's grants of summary judgment and remanded for further development of the record because, in its view, "the common law does not necessarily preclude the imposition of" a duty to report that a co-worker is engaged in a sexual relationship with a minor and the record here was not sufficiently developed to determine whether Arthur knew of Kenneth's illicit sexual relationship with plaintiff. G.A.-H. v. K.G.G., 455 N.J. Super. 294, 297-304 (App. Div. 2018).

We reverse the Appellate Division's judgment and reinstate the trial court's grants of summary judgment. The Appellate Division erred by failing to determine the issue of duty under the facts presented. Here, no reasonable trier of fact could find that Arthur knew or had special reason to know that

3

Kenneth was engaged in a sexual relationship with a minor. Accordingly, Arthur had no duty to report Kenneth. The record similarly fails to provide a basis for liability to attach to GEM. Because the record here is determinative of Arthur's and GEM's liability, we need not decide whether a co-worker or employer with knowledge or a special reason to know that a co-worker or employee is engaged in a sexual relationship with a minor has a legal duty to report that co-worker or employee.

I.

A.

The following facts were derived from the summary judgment record and from plaintiff's and Arthur's deposition testimony.

Kenneth and plaintiff first met through a mutual friend. Kenneth would take plaintiff and the friend to the movies. Plaintiff and Kenneth were also both involved with a traveling soccer team, which plaintiff managed and Kenneth served as an assistant coach. Kenneth began sexually abusing plaintiff by grooming her to "trust" him and threatening to end their relationship if she objected when he touched her sexually.

Kenneth began having sexual intercourse with plaintiff in September 2010, when she was fifteen and he was forty-four. Kenneth would pick up plaintiff from her house before school, drive to isolated areas, and have sex

4

with her in his car. Those excursions occurred on Kenneth's days off. When this illegal relationship was ongoing, Kenneth worked for GEM, a medical transportation provider, as an emergency medical technician.

While Kenneth was working, he would sometimes park a GEM ambulance near plaintiff's bus stop and, from there, he would walk her to her bus stop. No other GEM emergency medical technician interacted with plaintiff on these occasions, and plaintiff's bus stop could not be seen from the GEM vehicle. Plaintiff does not know whether Arthur, who was also an emergency medical technician for GEM, was ever in the GEM vehicle when Kenneth walked her to her bus stop. On one occasion, Kenneth drove plaintiff to her school in a GEM ambulance while other technicians were in the vehicle, but Kenneth did not touch plaintiff inappropriately or identify her as his "girlfriend." Plaintiff did not know whether Arthur was one of the technicians in the vehicle on that occasion.

Kenneth often bragged to co-workers that he was in a "relationship," but he never identified plaintiff by her real name or age. Kenneth often stated various ages when telling his co-workers how old his "girlfriend" was, but he never mentioned an age below the age of consent. For instance, he once told his co-workers that his "girlfriend" was twenty-two years old. Kenneth would also show pictures and videos of a naked female to Arthur.

5

Kenneth bought plaintiff a cell phone and demanded that she send him pictures and videos of herself. In addition, Kenneth would often record his sexual encounters with plaintiff.

Kenneth and Arthur worked together on several Tuesday shifts from December 2010 to February 2011. During those shifts, Kenneth would show Arthur the pictures and videos of a naked female that Kenneth had on his phone. Arthur would quickly look away from Kenneth's phone when shown the pictures and videos. Kenneth's phone was a "flip phone" with a small screen. Arthur also tried to shut down any discussion of the pictures and videos.

Kenneth's abuse of plaintiff ended in February 2011, when she informed her mother about her relationship with Kenneth. Plaintiff's mother notified the police of Kenneth's actions. Kenneth thereafter pled guilty to various criminal offenses.

B.

Plaintiff filed suit against Kenneth, Arthur, and GEM, among others, in February 2015. Plaintiff claimed that Arthur should have reported Kenneth to supervisors at GEM and that GEM was vicariously liable for Arthur's failure to report Kenneth's conduct and also negligent in retaining, training, and supervising Arthur and Kenneth. The trial court entered default judgment

6

against Kenneth. Plaintiff filed motions to obtain copies of the pictures and videos from Kenneth's phone, but the trial court declined to order that relief. Thereafter Arthur and GEM moved for summary judgment.

In a written decision, the trial court found no evidence indicating "that [Arthur] should have suspected any instances of child abuse . . . by [Kenneth]." In the trial court's view, there was no basis for Arthur to have a "reasonable belief" that Kenneth was engaged in a sexual relationship with a minor. The trial court held, moreover, that N.J.S.A. 9:6-8.10, which requires the reporting of child abuse in certain situations, did not require Arthur to report Kenneth because the statute does not cover the abuse at issue in this case. Specifically, in the trial court's view, N.J.S.A. 9:6-8.10 is limited by N.J.S.A. 9:6-8.9 and therefore creates a duty to report only abuse committed or allowed by a "parent, guardian, or other person having . . . custody or control" over the victim.

Accordingly, the trial court held that Arthur did not have a duty to report Kenneth. The trial court further held that there was no basis for liability to attach to GEM. Plaintiff appealed.

## C.

The Appellate Division vacated the trial court's grants of summary judgment and remanded the case to the trial court. G.A.-H., 455 N.J. Super. at

7

306. The Appellate Division agreed that N.J.S.A. 9:6-8.10 did not impose a duty to report based on the facts of this case. Id. at 300-01. The court considered, however, whether a duty of care can exist under the common law "when one remains silent and fails to warn a victim or alert authorities despite knowledge or a reason to suspect that a co-worker has engaged in the sexual abuse of a minor." Id. at 297. The Appellate Division concluded that "the common law does not necessarily preclude the imposition of such a duty." Ibid.

When analyzing the question of Arthur's duty to report, the Appellate Division analogized this case to J.S. v. R.T.H., 155 N.J. 330, 334, 342 (1998), in which this Court held that a spouse with "knowledge or special reason to know" that her spouse was sexually abusing children had a duty to prevent or report that abuse. See G.A.-H., 455 N.J. Super. at 301-04. The Appellate Division also looked to the factors set forth by this Court in J.S. as to the question whether a duty of care should be imposed:

> the nature of the underlying risk of harm, that is, its foreseeability and severity, the opportunity and ability to exercise care to prevent the harm, the comparative interests of, and the relationships between or among, the parties, and, ultimately, based on considerations of public policy and fairness, the societal interest in the proposed solution.
>
> [Id. at 302 (quoting J.S., 155 N.J. at 337).]

8

While recognizing that the relationship in J.S. -- spouses -- was different from the relationship in this case -- co-workers -- the Appellate Division did not allow that difference to "end [its] inquiry" because the common law can adapt to the public policy of the times. Id. at 301.

The Appellate Division declined to determine whether it should impose a duty to report in this case because it was not clear to the court, as the record was presented to it, "what [Arthur] knew and when he knew it." Id. at 304. In the Appellate Division's view, the lack of clarity was caused by the trial court's denial of plaintiff's request to view the pictures and videos on Kenneth's phone. Ibid. Accordingly, the Appellate Division vacated the trial court's decisions and remanded for further proceedings. Ibid.

We granted Arthur's and GEM's petitions for certification. 236 N.J. 103 (2018); 236 N.J. 101 (2018).

## II.

### A.

Arthur argues that the Appellate Division's opinion creates a vague, ill-defined duty that could lead to liability in many unanticipated situations and for individuals in many different occupations, thus leaving the public without adequate notice as to when a duty may be imposed for failure to report sexual abuse. It would be inappropriate to impose a duty upon him, Arthur states,

9

because he had no relationship or connection to plaintiff. In any event, Arthur asserts that he had no reason to suspect that Kenneth was engaged in a sexual relationship with a minor.

GEM also argues that there is no basis for liability to be imposed upon it because Kenneth's relationship with plaintiff was outside the scope of his employment with GEM and neither Arthur nor GEM should have a duty of care under the record as presented.

B.

Plaintiff argues that there was a reasonable basis for Arthur to believe Kenneth was engaged in a sexual relationship with a minor and that Arthur should therefore have a duty to report that relationship. Echoing the Appellate Division's holding, plaintiff claims that viewing the pictures and videos on Kenneth's phone will provide further evidence that Arthur had a reasonable basis to believe Kenneth was engaged in a sexual relationship with a minor. Plaintiff further argues that this reasonable basis is objective and apparent.

According to plaintiff, the Appellate Division did not err by analogizing this case to J.S. because Arthur's training as an emergency medical technician should have enabled him to recognize that plaintiff was a minor. Plaintiff adds that regulations that specifically require EMTs to report certain conduct under

10

certain circumstances imposed a reporting duty on Arthur here, and reveal that he should be "held to a higher standard than the spouse in J.S."

Plaintiff also argues that there are numerous facts upon which liability could attach to GEM, such as Kenneth's bragging at work and showing the pictures and videos to Arthur.

## III.

### A.

This Court reviews a trial court's grant of summary judgment de novo. Harz v. Borough of Spring Lake, 234 N.J. 317, 329 (2018). The crucial question when determining whether summary judgment should be granted is "whether the competent evidential materials presented, when viewed in the light most favorable to the non-moving party, are sufficient to permit a rational factfinder to resolve the alleged disputed issue in favor of the non-moving party." Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 540 (1995). Stated differently, Rule 4:46-2(c) specifies that summary judgment should be granted when "there is no genuine issue as to any material fact challenged and . . . the moving party is entitled to a judgment . . . as a matter of law."

### B.

"The fundamental elements of a negligence claim are a duty of care owed by the defendant to the plaintiff, a breach of that duty by the defendant,

injury to the plaintiff proximately caused by the breach, and damages." Robinson v. Vivirito, 217 N.J. 199, 208 (2014). Ultimately, while the factual record is viewed under the summary judgment standard, "whether a defendant owes a legal duty to another and the scope of that duty are generally questions of law for the court to decide." Ibid.; accord Jerkins v. Anderson, 191 N.J. 285, 294 (2007) ("Whether a duty of care exists is a question of law that must be decided by the court."); Hopkins v. Fox & Lazo Realtors, 132 N.J. 426, 439 (1993) ("Determining the scope of tort liability has traditionally been the responsibility of the courts.").

Courts consider several factors when determining whether a duty of care is owed: fairness and public policy; foreseeability; the relationship between the parties; the nature of the conduct at issue; "and the ability to alter behavior to avoid injury to another." Robinson, 217 N.J. at 208; see also J.S., 155 N.J. at 337; Hopkins, 132 N.J. at 439.

Courts should balance those factors in a "principled" fashion, leading to a decision that both resolves the current case and allows the public to anticipate when liability will attach to certain conduct. Hopkins, 132 N.J. at 439. "Foreseeability of the risk of harm is the foundational element in the determination of whether a duty exists," but "the determination of the existence of a duty is [ultimately] a question of fairness and public policy."

12

J.S., 155 N.J. at 337, 339; see also Dunphy v. Gregor, 136 N.J. 99, 109 (1994) ("Ultimately, whether a duty exists is a matter of fairness."); Hopkins, 132 N.J. at 439 ("Whether a person owes a duty of reasonable care toward another turns on whether the imposition of such a duty satisfies an abiding sense of basic fairness under all of the circumstances in light of considerations of public policy.").

Because "[p]ublic policy must be determined in the context of contemporary circumstances and considerations," duty of care "is a malleable concept that 'must of necessity adjust to the changing social relations and exigencies and man's relation to his fellows.'" J.S., 155 N.J. at 339 (quoting Wytupeck v. Camden, 25 N.J. 450, 462 (1957)). However, as a background principle, the law of torts declines to impose a duty of care upon "[a]n actor whose conduct has not created a risk of physical or emotional harm to another." Restatement (Third) of Torts § 37 (Am. Law Inst. 2012). Accordingly, when the duty at issue relates to the risk of harm created by a third party, the plaintiff must prove that the defendant knew or had reason to know of the risk of harm in question. J.S., 155 N.J. at 338.

## C.

Although tort law requires the creation of a risk of harm before a duty of care is imposed, tort law imposes vicarious liability, without "personal fault,"

13

upon employers for certain acts of an employee. Carter v. Reynolds, 175 N.J. 402, 408 (2003). The imposition of vicarious liability upon employers for the acts of an employee, also known as the doctrine of respondeat superior, is based upon the idea that the employee is the agent or, "arm" of the employer. Davis v. Devereux Found., 209 N.J. 269, 287 (2012); see also Schultz v. Roman Catholic Archdiocese, 95 N.J. 530, 538 (1984) ("[A] corporation can act only through its agents or servants."); Meir Dan-Cohen, Responsibility and the Boundaries of the Self, 105 Harv. L. Rev. 959, 981-82 (1992) (likening vicarious liability for the acts of an employee to "the model of responsibility for [one's] body"). Respondeat superior dates back to "the seventeenth-century common law of England" and "has long been part of New Jersey law." Davis, 209 N.J. at 287. For liability to attach to an employer under the doctrine of respondeat superior, the plaintiff must prove the existence of an employer-employee relationship and that the employee's tortious actions "occurred within the scope of that employment." Carter, 175 N.J. at 409.

Unlike respondeat superior, negligent hiring, supervision, and training are not forms of vicarious liability and are based on the direct fault of an employer. See Schultz, 95 N.J. at 534-35; Hoag v. Brown, 397 N.J. Super. 34, 54 (App. Div. 2007) ("[A] claim based on negligent hiring or negligent supervision is separate from a claim based on respondeat superior."). To be

14

found liable for negligent hiring, the plaintiff must show: (1) that the employer "knew or had reason to know of the particular unfitness, incompetence or dangerous attributes of the employee and could reasonably have foreseen that such qualities created a risk of harm to other persons" and (2) "that, through the negligence of the employer in hiring the employee, the latter's incompetence, unfitness or dangerous characteristics proximately caused the injury." DiCosala v. Kay, 91 N.J. 159, 173 (1982). To be found liable for negligent supervision or training, the plaintiff must satisfy what is essentially the same standard, but framed in terms of supervision or training. See ibid. That is to say, the plaintiff must prove that (1) an employer knew or had reason to know that the failure to supervise or train an employee in a certain way would create a risk of harm and (2) that risk of harm materializes and causes the plaintiff's damages. See ibid.

IV.

A.

Applying those principles to the facts of this case, we first note that the regulations relied on by plaintiff do not impose on Arthur a duty to report under the circumstances of this case. N.J.A.C. 8:40-3.7(a)(4) requires EMTs and others to report "[a]ny instance where a crewmember acts outside of his or her approved scope of practice," but no such conduct was alleged here. And

15

N.J.A.C. 8:40-3.7(a)(5)'s requirement that EMTs and others report, among other things, "any instances of child abuse or neglect" depends on the definition of child abuse set forth in Title 9, which both the trial court and the Appellate Division correctly found to be limited to conduct by the child's "parent, guardian, or other person having . . . custody and control" of the child. See N.J.S.A. 9:6-8.9.

In J.S., this Court held that a spouse owes children sexually abused by her husband a duty of care "to take reasonable steps to prevent or warn of the harm" when she has "actual knowledge or special reason to know that her husband is abusing or is likely to abuse an identifiable victim." 155 N.J. at 342-43, 352. We need not decide whether that duty should apply to co-workers because no reasonable trier of fact could find that Arthur knew or had special reason to know that Kenneth was engaged in an illegal sexual relationship with a minor. See ibid.

The plaintiff has pointed to the following facts to establish a duty of care for Arthur to report Kenneth: (1) Kenneth walked plaintiff to her bus stop while she carried a backpack; (2) Kenneth gave inconsistent accounts of the age of his "girlfriend" when bragging to co-workers about his "girlfriend"; and (3) Kenneth showed Arthur pictures or videos of a naked female on his flip-phone. However, those facts do not establish that Arthur knew Kenneth was

16

engaged in a sexual relationship with a minor -- nor do those facts establish a "special reason [for Arthur] to know" that Kenneth was engaged in a sexual relationship with a minor.  See ibid.

It is often difficult to know someone's age based upon appearance alone. Plaintiff claims Arthur should have known she was below the age of consent because Kenneth showed him the pictures and videos of plaintiff on Kenneth's phone.  Nothing in the record suggests that Arthur viewed any pictures or videos of plaintiff.  But, even assuming he did, in order for Arthur to know that plaintiff was below the age of consent, he would have had to perceive the difference between someone who is above or below the age of consent based upon appearance alone and from a small cellphone image.  A small cellphone image of a naked female does not give rise to a "special reason to know" that Kenneth was engaged in a sexual relationship with a minor.  See id. at 338 (emphasis added).

Accordingly, the record here does not require further development for us to determine what is clear:  Arthur does not owe a duty of care in this case. We further hold that there are no facts presented upon which liability could attach to GEM.  See generally Carter, 175 N.J. at 409 ("To establish a master's liability for the acts of his servant, a plaintiff must prove (1) that a master-servant relationship existed and (2) that the tortious act of the servant occurred

17

within the scope of that employment.").  Because Arthur did not commit a tort, GEM cannot be held vicariously liable for his conduct.  And the record does not adequately support plaintiff's claim for negligent retention, training, or supervision.  Although plaintiff has pointed to various actions by Kenneth that occurred at work, the only tort in this case is Kenneth's off-duty abuse of plaintiff.  That Kenneth bragged about having a younger "girlfriend" at work and also drove a GEM ambulance to plaintiff's bus stop does not make GEM negligent in retaining, training, or supervising Kenneth or Arthur.

## V.

For the reasons stated, the judgment of the Appellate Division is reversed and the trial court's grants of summary judgment are reinstated.


CHIEF JUSTICE RABNER and JUSTICES LaVECCHIA, ALBIN, PATTERSON, SOLOMON, and TIMPONE join in JUSTICE FERNANDEZ-VINA'S opinion.

18