**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2559-23

KIMBERLY CASTRO,

    Plaintiff-Appellant,

v.

NEW JERSEY TRANSIT
CORP. and ADEOYE
WINSALA,

    Defendants-Respondents.

_____

Submitted September 9, 2025 – Decided September 18, 2025

Before Judges Firko, Perez Friscia and Vinci.

On appeal from the Superior Court of New Jersey, Law Division, Essex County, Docket No. L-2924-19.

Matt Simon Law, attorneys for appellant (Matthew C. Simon, on the briefs).

Ruprecht Hart Ricciardulli & Sherman, LLP, attorneys for respondents (Thomas C. Hart, of counsel and on the brief; Alexander Stockdale and Andrew C. Smedberg, on the brief).

PER CURIAM

In this personal injury case, plaintiff Kimberly Castro appeals from the April 8, 2024 trial court order granting defendants New Jersey Transit Corporation's (NJT) and Adeoye Winsala's motions for a directed verdict and judgment. The trial court determined there were no genuinely disputed issues of material fact from which a reasonable jury could conclude Winsala negligently operated an NJT bus at the time of the intersectional collision in which plaintiff was injured. For the reasons that follow, we affirm.

I.

In her complaint, plaintiff alleged that on November 28, 2018, at approximately 6:55 p.m., her vehicle, a white Toyota Prius, was struck by NJT's bus driven by Winsala, in Newark. Plaintiff further alleged that she had a green light at the time of the collision, and Winsala did not have a green light. According to plaintiff, Winsala was speeding, failed to yield, failed to brake, and negligently operated the bus. Plaintiff also alleged that NJT was vicariously liable for Winsala's negligence. As a result of the accident, plaintiff claimed she sustained permanent injuries, and she sought compensatory damages.

The record shows the accident occurred at the intersection of Lindbergh Road and an access ramp to Terminal A at Newark Liberty International Airport. The intersection is controlled by a traffic light. At the intersection where the

accident occurred, there were two northbound lanes and two southbound lanes separated by a concrete median. The northbound lanes of Lindbergh Road curve to the left before and after the intersection. Winsala was operating the bus in a northbound direction, and plaintiff was traveling southbound, attempting to turn left onto the Terminal A ramp. A dedicated left turn lane was available for the southbound traffic turning lane left onto the Terminal A ramp, while the two southbound lanes are for traffic going straight through the intersection.

The speed limit on Lindbergh Road is thirty miles per hour. Winsala testified at his deposition that he had a green traffic light as he drove through the intersection. As Winsala was approximately halfway through the intersection, he testified that plaintiff's vehicle struck the bus near the middle of the driver's side as she attempted to enter the access ramp to Terminal A. Winsala claimed he always remained in his lane of travel. The posted speed limit was thirty miles per hour.

The accident was captured on the bus's two dash cameras, "Dash Cam A" and "Dash Cam B," and a nearby gas station camera.[1] Dash Cam A shows plaintiff's vehicle turning in front of another vehicle in the dedicated left turn lane. Dash Cam B depicts plaintiff's vehicle first making contact with the left

---

[1] This court independently reviewed the videos.

A-2559-23

side of the bus. The gas station video shows plaintiff's vehicle driving towards the side of the bus and making contact with the left side of the bus as the bus continues to drive forward. None of the videos show plaintiff's vehicle stopped before making contact with the bus.

The bus was also equipped with an event recorder and forward-facing video cameras that captured the incident. The camera situated in front of the bus showed that as Winsala reached the intersection, he turned the steering wheel to the left as the road curved to the left before the intersection. The video footage also revealed that as Winsala went through the intersection, the light stayed green the entire time. Winsala testified that he honked the horn and began moving the bus to the right and away from plaintiff's vehicle "1.25 seconds" before plaintiff's vehicle struck the bus.

The forward-facing camera from the front window of the bus did not show plaintiff's vehicle hitting the front of the bus, rather the crash is heard after the bus was halfway through the intersection. Defendants maintained plaintiff did not initiate her left turn from the left turn only lane, but rather drove around several vehicles that were stopped in the left turn only lane and executed her left turn from the left through lane.

4

During discovery, plaintiff served an accident reconstruction expert report from Dennis F. Andrews, Ph.D. In his report, Dr. Andrews opined that Winsala "turned left and sideswiped [plaintiff's] vehicle when a third vehicle crossed in front of his vehicle from left to right." Relying on photographs, Dr. Andrews concluded that plaintiff's vehicle "was not entering the subject intersection and [traveling] into the path of the [NJT] bus." Dr. Andrews's report does not state Winsala left his lane of travel at any time prior to impact.

At the close of discovery, defendants moved for summary judgment and to bar Dr. Andrews from testifying at the time of trial. On August 9, 2023, in an oral decision, the motion court denied both motions.[2] Defendants moved for reconsideration. On March 1, 2024, the motion court denied defendants' motion for reconsideration.

Prior to trial, defendants moved in limine to bar Dr. Andrews from testifying at trial. The motion was denied. The matter was tried before a jury on April 3, 4, and 5, 2024. Following opening statements, defense counsel made an initial motion for a directed verdict on the grounds that plaintiff's counsel's opening statement failed to establish sufficient evidence to support negligence

---

[2] The motion papers and August 9, 2023 transcript are not in the appellate record.

claims by defendants. The trial court denied the motion without prejudice but held that defendants could renew their motion for a directed verdict at the close of plaintiff's case.

Plaintiff called Dr. Andrews as her first witness. He was qualified as an accident reconstruction expert. Based upon his review of the videos, photographs, deposition transcripts, and documentary evidence, Dr. Andrews testified the bus accelerated to twenty-eight miles per hour before reaching the intersection and that Winsala turned his wheel to the left before the impact occurred to negotiate the left curve of the roadway. According to Dr. Andrews, after the accident, Winsala turned the wheel substantially to the right in order to drive over to the right shoulder lane. Dr. Andrews opined that the damage to plaintiff's vehicle and the bus indicated it was a "side[-]swipe impact" because "the hood of the vehicle is displaced to the left because you can see the lip of the hood located to the left."

During Dr. Andrews's direct testimony, Dash Cam A, Dash Cam B, and the gas station video were played for the jury. Regarding Dash Cam A, Dr. Andrews testified:

> Well, the bus driver turns the wheel to the left, the impact that occurred, you can hear the impact and then immediately, the bus driver turns his wheel to the

6

right and you can see the bus moving over into a right-hand lane.

I also noticed on [Dash Cam A] and I believe that's [Dash Cam A] that the bus driver was traveling at [twenty-eight] miles per hour.

In regard to Dash Cam B, Dr. Andrews stated the following:

Well, Dash Cam B is a camera mounted way in the back of the bus. So we're showing from the back of the bus towards the front and you can't really make out the bus driver's movements that well nor can you see anything outside of the windows on the left or right side of the bus.

The only thing you see on the left and right side windows of the bus is the bright lights. It's—the video shows white, which would be the lighting, ambient lighting of any stores nearby, street lighting but you can't see anything outside of the bus.

As to the gas station video, Dr. Andrews testified:

I noticed that, as the bus passed [plaintiff's] vehicle, [plaintiff's] vehicle stopped prior to the impact and you can tell a little bit where the bus, after the vehicle crossed in front of it suddenly, the bus slightly moved to the left and that's when the impact occurred.

. . . .

[N]one of the videos showed the bus slowing down. As a matter of fact, the videos show the bus was accelerating.

On cross-examination, Dr. Andrews opined that a motorist navigating the subject intersection would have to drive left to follow the geometry of the road but "after the point of impact. . . ." Dr. Andrews conceded that the photographs show "slight[] rearward" damage to plaintiff's hood. Dr. Andrews testified that he determined plaintiff's vehicle was "stopped" at the time of impact based on the gas station video. However, when questioned about the gas station video, Dr. Andrews was unable to identify plaintiff's vehicle in the footage. Dr. Andrews stated that the bus moved to the left prior to impact, but he did not consider the "degree" to which the bus moved important to his analysis.

Plaintiff was the next witness who testified that day. Plaintiff stated she had been attempting to make a left-hand turn at the intersection and suddenly saw a bus coming at her "very fast." Plaintiff testified her first reaction was to come to a "complete stop." Plaintiff denied going into the path of the bus. As she was holding the steering wheel, plaintiff testified "[she] was struck and side-swiped by a bus, which was terrible" because the front of her vehicle "smashed inwards." According to plaintiff, she was stationary at the time of the impact, the bus "sped up, changed directions[,] and swerved into [her] car." In contrast, plaintiff had testified at her deposition that her vehicle was in motion and not stopped at the time of impact.

On cross-examination, plaintiff testified that when turning at the subject intersection, a driver has to do so from only the left turn lane. Plaintiff explained that at some point while making the left turn, the green arrow "switched to [a] solid green [light . . . .]" Plaintiff testified that when the police officer prepared the initial accident report, "he kept drawing the picture that it was like this when the accident was never forward, it was sideways." Plaintiff testified she returned to the police station to amend the report a few weeks later and "kept telling [the officer] it was a green arrow and at some point, it switched to solid green and it was never added in the report." Plaintiff stated that before she was hit by the bus, "[she] came to a complete stop because [she] saw something coming really fast."

Plaintiff's cross-examination continued the next day. Defense counsel had plaintiff read from the amended police report, which stated, "driver of vehicle two [(plaintiff)] states that vehicle one [(Winsala)] was driving fast [at] a red light and struck her vehicle on the front right side as she was making a left turn, on a green left arrow into the intersection." In response, plaintiff admitted at trial she did not believe that Winsala had a red light, and despite seeing that statement on the amended police report, she never went back to the police station to change it.

A-2559-23

Plaintiff then contradicted herself and stated that she did go back to try and change the amended report to state Winsala did not have a red light, but the police officer "told [her] that the report is staying how it is, take it or leave it." Further, on cross-examination, plaintiff admitted at her deposition she testified she had a green turning arrow but was now stating she had a green turning arrow "that turned solid green at some point" while she was turning. Plaintiff denied that her story had "changed" since her deposition. Plaintiff testified "[m]y story's always been the same, that [it was] a left green arrow, and yes at some point it changed [to full] green."

Plaintiff called her parents, her sister, and Dr. Joseph Bellapianta to testify on the issue of damages, which is not relevant to this appeal. After plaintiff rested, defense counsel renewed his motion for a directed verdict and moved for judgment under Rule 4:40-1[3] on the basis no evidence was introduced to show that Winsala or NJT were negligent, and no rational juror could find in plaintiff's favor. Defense counsel argued plaintiff and Dr. Andrews agreed she would have had to yield to the bus; it was undisputed the bus had a green light; and there was no evidence Winsala was speeding.

---

[3] Rule 4:40-1 states in pertinent part: "[a] motion for judgment, stating specifically the grounds therefor, may be made by a party either at the close of all the evidence or at the close of the evidence offered by an opponent."

Plaintiff countered that plaintiff and Dr. Andrews both testified that she did not go into the path of the bus; plaintiff was stopped at the time of the accident waiting to make a left turn; and the expert opined it was a side-swipe impact. Plaintiff maintained that the fact she did not enter the bus's lane of travel and the bus side-swiped her vehicle "implies" the bus hit her vehicle.

The trial court granted defendants' motions, finding there was no sufficient evidence of negligence on the part of Winsala. The trial court found Winsala "did nothing legally wrong," and plaintiff failed to "yield to all of the other traffic." In particular, the trial court noted Dr. Andrews agreed that Winsala never left his lane of travel, which contradicted the expert's conclusion, "within a reasonable degree of accident reconstruction certainty," that the cause of the impact was purportedly "the left turn" of the bus.

The trial court emphasized plaintiff presented no proof that Winsala was "distracted" or "speeding." The trial court credited Winsala's deposition testimony that he "slightly moved to the left," he explained "why" he moved to the left and noted "the road goes to the left." A memorializing order was entered.

On appeal, plaintiff primarily argues that the trial court improperly dismissed the complaint on directed verdict because there were questions of fact for the jury to decide. Plaintiff also contends the trial court improperly refused

her request to read Winsala's entire deposition transcript and admit Winsala's NJT complaint log into evidence.

## II.

A trial court applies the same standard as a motion for involuntary dismissal under Rule 4:37-2(b) when deciding a defendant's Rule 4:40-1 directed verdict motion at the close of a plaintiff's case. Rule 4:37-2(b) permits the judge to grant a motion for involuntary dismissal of any action, or part thereof, at the end of a plaintiff's case on "the ground that upon the facts and upon the law the plaintiff has shown no right to relief." "Whether the action is tried with or without a jury, such motion shall be denied if the evidence, together with the legitimate inferences therefrom, could sustain a judgment in plaintiff's favor." Ibid.

A dismissal is appropriate when "no rational jury could conclude from the evidence that an essential element of the plaintiff's case is present." Pressler & Verniero, Current N.J. Court Rules, cmt. 2.1 on R. 4:37-2(b) (2026). Said differently, a directed verdict is proper "if the evidence and uncontradicted testimony is 'so plain and complete that disbelief of the story could not reasonably arise in the rational process of an ordinarily intelligent mind, then a question has been presented for the [judge] to decide and not the jury.'" Frugis

v. Bracigliano, 177 N.J. 250, 270 (2003) (quoting Ferdinand v. Agric. Ins. Co., 22 N.J. 482, 494 (1956)).

We review the grant of a directed verdict de novo. See Manalapan Realty, L.P. v. Manalapan Twp. Comm., 140 N.J. 366, 378 (1995). We accord no special deference to a trial court's assessment of the documentary record because it does not turn on a trial court's determinations of credibility but instead on questions of law. Ibid. (noting that no "special deference" applies to a trial court's legal determinations). We accept as true all evidence that supports the non-moving party's position and all favorable inferences therefrom. Akhtar v. JDN Props. at Florham Park, LLC, 439 N.J. Super. 391, 403 (App. Div. 2015).

It is undisputed defendant NJT is a public entity and plaintiff's claims are thus properly evaluated under the provisions of the Torts Claims Act (TCA), N.J.S.A. 59:1-1 to :12-3. Muhammad v. N.J. Transit, 176 N.J. 185, 194 (2003). "[P]ublic entity liability is restricted under the [TCA]." Polzo v. Cnty. of Essex, 209 N.J. 51, 55 (2012). Generally, a public entity is "immune from tort liability unless there is a specific statutory provision imposing liability." Kahrar v. Borough of Wallington, 171 N.J. 3, 10 (2012) (citing Collins v. Union Cnty. Jail, 150 N.J. 407, 413 (1997)); see also N.J.S.A. 59:1-2, 2-1. Accordingly, "immunity for public entities is the general rule and liability is the exception."

Kemp by Wright v. State, 147 N.J. 294, 299 (1997); accord D.D. v. Univ. of Med. & Dentistry of N.J., 213 N.J. 130, 134 (2013) (describing that rule as "the 'guiding principle' of the [TCA]." (quoting Coyne v. State Dep't of Transp., 182 N.J. 481, 488 (2005))).

"To sustain a cause of action for negligence, a plaintiff must establish [the following] four elements:  '(1) a duty of care; (2) a breach of that duty; (3) proximate cause; and (4) damages.'"  Townsend v. Pierre, 221 N.J. 36, 51 (2015) (quoting Polzo, 196 N.J. at 584).  The plaintiff must do so "by some competent proof."  Ibid.  (quoting Davis v. Brickman Landscaping, Ltd., 219 N.J. 395, 406 (2014)).  The mere happening of an accident does not raise a presumption of negligence.  See Allendorf v. Kaiserman Enters., 266 N.J. Super 662, 670 (App. Div. 1993).

Before us, plaintiff argues the trial court erroneously relied on Dr. Andrews's expert report submitted in conjunction with the in limine motions and inserted its own opinion that Winsala "never left the lane."  According to plaintiff, the trial court directed her counsel to clarify that the bus never left its lane of travel, and Dr. Andrews disagreed and said, "no."  Dr. Andrews also later testified that when the red car cut in front of the bus, Winsala turned the wheel

14

"slightly to the left" to avoid hitting it, and that is when the impact occurred. We are unpersuaded.

Here, based on the uncontroverted evidence presented, plaintiff was in the left through lane of the roadway and not the dedicated left-hand turning lane at the time of the accident. The record shows plaintiff's lane was controlled by a designation on the roadway that only a straight path of travel is permitted. Instead of obeying that traffic command, she made a left-hand turn from the left through lane. Plaintiff disregarded the lane markings and drove her vehicle into a lane of travel she should not have occupied. Although both drivers had a duty to make proper observations, see Beck v. Washington, 149 N.J. Super. 569, 572 (App. Div. 1977), plaintiff's presence on the roadway next to Winsala's lane of travel at the time of impact was not reasonably foreseeable. Based upon our de novo review, we conclude Winsala was not negligent.

Plaintiff had the burden to establish Winsala was at least fifty percent responsible for the accident to permit her to recover against defendants. See Stabile v. N.J. Mfrs. Ins. Co., 263 N.J. Super. 434, 439-41 (App. Div. 1993); see also N.J.S.A. 2A:15-5.1 to -5.8. The trial court found plaintiff failed to carry her burden to establish a prima facie case of Winsala's greater liability for the accident. Although the trial court acknowledged Winsala may have moved

15

slightly to the left when driving at the intersection, it found the discrepancy immaterial for purposes of the directed verdict. Moreover, plaintiff offered no evidence that Winsala left his lane, went over the speed limit, or did anything wrong. The record supports that determination.

Besides there being no evidence in the record suggesting Winsala left his lane, the trial court also determined there was no evidence Winsala was "distracted" as plaintiff alleged. The trial court emphasized plaintiff "has a right to turn only after she yield[s] to all of the traffic. That doesn't change the case law, you must yield to all of the other traffic. You can't—and the bus driver [(Winsala)] did nothing legally wrong." Viewing the facts on the directed verdict motion in the light most favorable to plaintiff, the trial court concluded that there was "no way a rational jury, a reasonable fact finder, can find from this evidence that [Winsala] was more than [twenty-percent] responsible. It's not possible . . . with the facts of this case."

We are also mindful of increased risk of danger with respect to drivers making left-hand turns:

> Left turns on two-way roadways. At any intersection where traffic is permitted to move in both directions on each roadway entering the intersection, an approach for a left turn shall be made in that portion of the right half of the roadway nearest the center line thereof and by passing to the right of such center line where it enters

16

the intersection and after entering the intersection the left turn shall be made so as to leave the intersection to the right of the center line of the roadway being entered. Whenever practicable the left turn shall be made in that portion of the intersection to the left of the center of the intersection.

[N.J.S.A. 39:4-123(b).]

Both plaintiff and Dr. Andrews conceded at trial that she had a duty to yield to the bus. Winsala had a green light as he continued to drive the bus through the subject intersection.

Based upon our de novo review, and according all favorable inferences to plaintiff, we are satisfied that defendants' motion for a directed verdict and judgment were properly granted. Plaintiff did not adduce evidence during her case in chief sufficient to permit a rational factfinder to conclude Winsala was speeding, distracted, left his lane, or that plaintiff—who was making a left turn in front of the bus—had the right of way, even when viewed in the light most favorable to her. In order to stave off the motion for a directed verdict here, it was incumbent on plaintiff "to demonstrate by competent evidential material that a genuine issue of fact exist[ed]." Robbins v. Jersey City, 23 N.J. 229, 241 (1957). There were no factual disputes for the jury to decide on the issue of liability.

## III.

Next, plaintiff argues the trial court improperly refused her request to read Winsala's entire deposition transcript into evidence at the close of her case. Plaintiff contends that in her Rule 4:25-7(b) Pretrial Information Exchange, she did not include specific page and line numbers to Winsala's deposition testimony intended to be read at trial. The trial court denied plaintiff's proffer to read the entirety of Winsala's deposition testimony into the record.

Plaintiff asserts there is no court rule which precluded her from reading the entire deposition transcript into the record. Plaintiff maintains that defendants had timely notice of her intent to read Winsala's deposition transcript into evidence and no objection or request for specific citations were ever made. According to plaintiff, Winsala's deposition testimony is "probative" of negligence because it relates to his failure to "observe, appreciate, and avoid" her vehicle while traveling through an intersection with a green light. Plaintiff also argues that the deposition testimony is relevant as to NJT's negligence in employing Winsala and ignoring his alleged poor driving history, prior complaints, and violations.

Defendants counter that plaintiff failed to comply with the Pretrial Information Exchange prescribed in Rule 4:25-7(b). Specifically, defendants

18

point out that plaintiff merely listed Winsala's deposition transcript as a potential exhibit, but she never declared she intended to read the transcript into evidence as an admission by a party opponent. Defendants also argue that plaintiff "concedes" that she did not include specific page and line citations in her Pretrial Information Exchange.

Since a trial court's discovery rulings are "entitled to substantial deference," we review for an abuse of discretion. DiFiore v. Pezic, 254 N.J. 212, 228 (2023) (quoting State v. Stein, 225 N.J. 582, 593 (2016)). "We generally defer to a trial court's disposition of discovery matters unless the court has abused its discretion or its determination is based on a mistaken understanding of the applicable law." Rivers v. LSC P'ship, 378 N.J. Super. 68, 80 (App. Div. 2005) (citing Payton v. N.J. Tpk. Auth., 148 N.J. 524, 559 (1997)). We review the trial court's application of Rule 4:25-7 de novo. DiFiore, 254 N.J. at 228 ("[W]e review the meaning or scope of a court rule de novo, applying ordinary principles of statutory construction to interpret the court rules.").

Rule 4:25-7(b) provides "in cases that have not been pretried, attorneys shall confer and, seven days prior to the initial trial date, exchange the pretrial information as prescribed by Appendix XXIII to these rules." Subsection (b) specifically states:

At trial and prior to opening statements, the parties shall submit to the court the following in writing: (1) copies of any [p]retrial [i]nformation [e]xchange materials that have been exchanged pursuant to this rule, and any objections made thereto; and (2) stipulations reached on contested procedural, evidentiary, and substantive issues. In addition, in jury trials, the parties shall also exchange and submit (1) any proposed voir dire questions, (2) a list of proposed jury instructions pursuant to R[ule] 1:8-7, with specific reference either to the Model Civil Jury Charges, if applicable, or to applicable legal authority, and (3) a proposed jury verdict form that includes all possible verdicts the jury may return. Failure to exchange and submit all the information required by this rule may result in sanctions as determined by the trial judge.

[R. 4:25-7(b).]

Further, Appendix XXIII states:

In cases that have not been pretried, attorneys shall confer and exchange the following information seven days prior to the initial trial date, unless such exchange has been waived by written consent of the parties pursuant to R[ule] 4:25-7(d):

. . .

3. A list of any proposed deposition or interrogatory reading(s) by page and line number or by question number.

. . .

[Pretrial Information Exchange, Pressler & Verniero, Current N.J. Court Rules, Appendix XXIII to R. 4:25-7(b), at 2136 (2026).]

Because plaintiff failed to comply with Rule 4:25-7(b), we conclude the trial court did not abuse its discretion in denying plaintiff's request to read Winsala's entire deposition transcript into the record at trial.

IV.

Finally, plaintiff argues the trial court abused its discretion and prevented her from establishing a prima facie case of negligent hiring, training, and retention by not allowing Winsala's NJT complaint log into evidence. The NJT complaint log provides dates and general descriptions of complaints involving Winsala, such as "customer complaint," "violation," and "investigation ok." Plaintiff did not depose any individuals having knowledge of the entries in the NJT complaint log or who was involved with its preparation. The trial court ruled the NJT complaint log was inadmissible because the entries were prejudicial and bore no similarities to the subject accident.

Negligent training and supervision claims "are not forms of vicarious liability," but rather "are based on the direct fault of an employer." G.A.-H. v. K.G.G., 238 N.J. 401, 415 (2019). To establish a party acted negligently, a plaintiff must present evidence establishing "a duty of care owed by the defendant to the plaintiff, a breach of that duty by the defendant, injury to the plaintiff proximately caused by the breach, and damages." Robinson v. Vivirito,

21

217 N.J. 199, 208 (2014). Where, as here, a plaintiff claims an employer breached a duty "relate[d] to the risk of harm created by [an employee], the plaintiff must prove that the [employer] knew or had reason to know of the risk of harm in question." G.A.-H., 238 N.J. at 415.

To establish a negligent training or supervision claim, a plaintiff must present evidence demonstrating:

> (1) that the employer "knew or had reason to know of the particular unfitness, incompetence[,] or dangerous attributes of the employee and could reasonably have foreseen that such qualities created a risk of harm to other persons" and (2) "that, through the negligence of the employer in hiring the employee, the latter's incompetence, unfitness[,] or dangerous characteristics proximately caused the injury."
>
> [Id. at 416 (quoting Di Cosala v. Kay, 91 N.J. 159, 173 (1982)).]

Stated differently, a "plaintiff must prove that (1) an employer knew or had reason to know that the failure to supervise or train an employee in a certain way would create a risk of harm and (2) that risk of harm materializes and causes the plaintiff's damages." Ibid.

Winsala's NJT complaint log is bereft of any evidence that he was unfit or possessed dangerous properties to operate a bus. Moreover, the NJT complaint log provides scant information and does not even detail what the alleged

22

complaints were. In the two years preceding the subject accident, Winsala only had five complaints, and each was deemed "OK" in the record. There is no evidence of Winsala being disciplined by NJT as a consequence of any of the complaints, except once for using a cell phone. Most of the complaints were about his tardiness.

At his deposition, Winsala testified that he obtained his commercial driver's license in 2003, and after being hired by NJT, he attended a three-month-long class on situational driving and evasive maneuverers. There is nothing in the record to suggest Winsala was using a cell phone at the time of the subject accident.

In assessing these points, we discern no abuse of discretion in the trial court's exclusion of Winsala's NJT complaint log into evidence and no clear error of judgment. Griffin v. City of E. Orange, 225 N.J. 400, 413 (2016). Plaintiff was obligated to present competent evidence establishing—or supporting reasonable inferences—to satisfy the two-prong test in G.A.-H. 238 N.J. at 416. Thus, the trial court did not abuse its discretion in refusing to admit Winsala's NJT complaint log into evidence.

In sum, our review of the record supports the trial court's determination plaintiff did not present evidence at trial to show that "reasonable minds could

23

differ" to survive defendants' motion for a directed verdict and judgment. Having applied that standard on appeal, we agree with the trial court's order granting defendant's motion for a directed verdict and judgment. We also discern no abuse of discretion in the trial court's evidentiary rulings. Accordingly, we affirm the April 8, 2024 order.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

*M.C. Harley*

Clerk of the Appellate Division

A-2559-23