877 A.2d 291

J.M.L., A MINOR, BY AND THROUGH HER GUARDIAN AD LITEM,
T.G., PLAINTIFFS–APPELLANTS, v. A.M.P., INDIVIDUALLY,
A.M.P. AND L.P. D/B/A S., INC., A., INC. AND D.T., DEFEN-
DANTS–RESPONDENTS.

Superior Court of New Jersey
Appellate Division

Argued May 31, 2005—Decided July 8, 2005.

Before Judges CUFF, WEISSBARD and HOENS.

*Stephen R. Dumser* argued the cause for appellants (*Gercke, Dumser & Sierzega*, attorneys; *Mr. Dumser and Ronald P. Sierzega*, on the brief).

*Gerard X. Smith* argued the cause for respondents A., Inc. and D.T. (*Naulty, Scaricamazza & McDevitt*, attorneys; *Mr. Smith and Susan B. Pliner*, on the brief).

*Ballard, Spahr, Andrews & Ingersoll*, attorneys for respondent S., Inc. (*Michele M. Fox, Edward T. Groh and Stuart A. Platt*, on the brief).

The opinion of the court was delivered by

CUFF, J.A.D.

When J.M.L. was fourteen, she was employed as an instructor at a karate studio. J.M.L. and A.M.P., her forty-one year old employer, commenced an almost year long affair. Following A.M.P.'s indictment and conviction of second degree sexual assault, contrary to *N.J.S.A.* 2C:14–2c(2), J.M.L., through her guardian ad litem, filed a complaint under the Law Against Discrimination (LAD) [1] against her employer and the franchisor of the karate

---

[1] *N.J.S.A.* 10:5–1 to –49.

studio. She claimed that she was the victim of sexual harassment. Summary judgment was granted in favor of the corporate defendants on the basis that A.M.P.'s advances were welcomed by J.M.L. Plaintiff appeals. Due to the settlement of all claims between J.M.L. and her employer, we consider only the order granting summary judgment in favor of the franchisor. We affirm, albeit for reasons different from those advanced by the motion judge.

A.M.P. and his wife, L.P., owned a karate studio in Burlington County. It operated under a corporate name, S., Inc. The studio was a franchise of A., Inc. D.T. is the owner of A., Inc. J.M.L. had been a student at A.M.P.'s studio since she was ten years old. In June 1999, J.M.L. began working at the studio as an instructor for the younger children. In July 1999, J.M.L. and A.M.P. started a sexual relationship that lasted for seven months. A.M.P. was forty-one years old; J.M.L. was fourteen. The sexual encounters occurred in the studio and outside the studio.

In February 2000, J.M.L. ceased her part-time employment at the studio at her mother's insistence. In March 2000, A.M.P. was indicted and subsequently pled guilty to one count of sexual assault.

On November 22, 2000, J.M.L. and her parents filed a complaint against A.M.P. and his wife, L.P. individually and as owners of the karate studio in which J.M.L. was employed. The complaint alleged that J.M.L. was the victim of sexual harassment in violation of the LAD. The complaint was amended four times. The first amended complaint asserted a claim against S., Inc., the corporate entity that operated the studio. The second amended complaint alleged negligence against L.P. The third amended complaint alleged that A.M.P. and L.P. violated *N.J.S.A.* 2A:61B–1 (statutory civil action for sexual abuse). The fourth amended complaint alleged that A., Inc. and D.T., the franchisor of the karate studio, violated the LAD. A default judgment was entered against A.M.P. on March 19, 2004. A settlement was reached with L.P.

J.M.L. filed a motion to bar "welcomeness" as an affirmative defense against the LAD claims and to preclude any evidence at trial that A.M.P.'s advances were welcome. S., Inc. filed a cross-motion for summary judgment on Count II (sexual harassment). After oral argument on the motion, but before a decision had been delivered, A., Inc. and D.T. filed a motion for summary judgment on the LAD claims. After another round of oral arguments, the motions for summary judgment were granted and the complaint was dismissed against both corporate defendants and D.T. Prior to oral argument of this appeal, S., Inc. reached a settlement with J.M.L.

In her oral opinion, the motion judge held that in order to establish a claim of sexual harassment, a plaintiff must demonstrate that the actions of a co-employee or employer must have a negative effect on her, such as dismissal or an unwanted or undesired alteration of the terms and conditions of employment. She also held that a co-employee or employer may defend a claim of sexual harassment with proof that the behavior was welcome. Finding no exception to these principles when the victim is a minor, the motion judge granted the corporate defendants' motions for summary judgment and implicitly denied plaintiff's motion to bar the affirmative defense of welcomeness. The motion judge did not address A., Inc.'s alternative basis for summary judgment, that as a franchisor of the karate studio, it cannot be liable under the LAD as plaintiff's employer.

We commence our review with a brief overview of the nature of a sexual harassment claim under the LAD. In *Lehmann v. Toys 'R' Us, Inc.*, 132 *N.J.* 587, 601, 626 *A.*2d 445 (1993), the Court recognized two forms of sexual harassment. While quid pro quo harassment conditions employment on submission to sexual demands, "[h]ostile work environment sexual harassment ... occurs when an employer ... harass[es] an employee because of his or her sex to the point at which the working environment becomes hostile." *Ibid.*

■ The Court identified the following elements necessary to make out a prima facie case of hostile work environment sexual discrimination under the LAD: "(1) [the conduct] would not have occurred *but for* the employee's gender; and it was (2) *severe or pervasive* enough to make a (3) *reasonable woman* believe that (4) the conditions of employment are altered and the *working environment is hostile or abusive.*" *Id.* at 603–04, 626 A.2d 445. The unique problem in this case is whether J.M.L.'s failure to complain of A.M.P.'s sexual advances and her profession of affection for A.M.P. bars her sexual harassment claim. Neither the LAD nor case law addresses this issue in the context of a victim who is a minor. Various cases recognize that a consensual sexual relationship between employees negates the elements of a hostile environment sexual harassment claim. *See Erickson v. Marsh & McLennan Co.,* 117 *N.J.* 539, 557, 569 A.2d 793 (1990); *Mandel v. UBS/PaineWebber, Inc.,* 373 *N.J.Super.* 55, 78, 860 A.2d 945 (App.Div.2004). A., Inc. urges that the standard should be no different for a minor and further contends that the fact that the same conduct constitutes a first or second degree offense is irrelevant.

■ The Legislature has determined that sexual relations between an adult and a fourteen year old child constitutes aggravated sexual assault, a first degree offense. *N.J.S.A.* 2C:14–2a. Consent by the victim is not a defense. *N.J.S.A.* 2C:2–10c(2); *State v. Martin,* 235 *N.J.Super.* 47, 56–58, 561 A.2d 631 (App.Div.), *certif. denied,* 117 *N.J.* 669, 569 A.2d 1359 (1989). In declaring the conduct a criminal offense, the Legislature has declared that it is against the public policy of this State for an adult to engage in sexual relations with a fourteen year old girl. As a matter of public policy, it has decreed that a fourteen year old girl is not mature enough to consent to or to welcome the sexual advances of an older man. In doing so, the Legislature has established an irrebuttable presumption that sexual relations under the circumstances outlined in *N.J.S.A.* 2C:14–2 cause harm to the young victim. We discern no basis to conclude that this public policy is

subject to dilution in the context of workplace relationships between a minor and an adult. Thus, we reject, as error, this basis for entry of summary judgment in favor of A., Inc.

In support of its motion for summary judgment, A., Inc. also argued that the evidence presented in support of and in opposition to its motion, viewed in the light most favorable to plaintiff, did not allow a rational factfinder to hold it, the franchisor, liable for the acts of one of its franchisees. Because we review a summary judgment by the same standard as the motion judge, *Prudential Property & Casualty Insurance Co. v. Boylan*, 307 *N.J.Super.* 162, 167, 704 *A.*2d 597 (App.Div.1998), we elect to examine this argument even though it was not addressed by the motion judge.

"[A] party may defeat a motion for summary judgment by demonstrating that the evidential materials relied upon by the moving party, considered in light of the applicable burden of proof, raise sufficient credibility issues 'to permit a rational factfinder to resolve the alleged disputed issue in favor of the non-moving party.'" *D'Amato v. D'Amato*, 305 *N.J.Super.* 109, 114, 701 *A.*2d 970 (App.Div.1997) (quoting *Brill v. Guardian Life Ins. Co. of Am.*, 142 *N.J.* 520, 523, 666 *A.*2d 146 (1995)). In determining whether there is a genuine issue of fact, the judge must decide whether "the competent evidential materials presented, when viewed in the light most favorable to the non-moving party, are sufficient to permit a rational factfinder to resolve the alleged disputed issue in favor of the non-moving party.... If there exists a single, unavoidable resolution of the alleged disputed issue of fact, that issue should be considered insufficient to constitute a 'genuine' issue of material fact for purposes of *Rule* 4:46–2." *Brill, supra*, 142 *N.J.* at 540, 666 *A.*2d 146. Thus, "when the evidence 'is so one-sided that one party must prevail as a matter of law,' ... the trial court should not hesitate to grant summary judgment." *Ibid.* (citation omitted).

We have been unable to locate any case in this State that has addressed franchisor liability for hostile work environment

sexual discrimination.[2]   Liability of an employer for sexual harass-
ment of an employee by a co-employee or supervisor generally
invokes agency principles as set forth in the *Restatement (Second)
of Agency* Section 219.   *Lehmann, supra,* 132 *N.J.* at 619, 626
*A.*2d 445.   Other jurisdictions have invoked agency principles to
determine the imposition of liability on a franchisor for the
tortious or criminal acts of a franchisee.   The degree of control,
the actual exercise of control and the use of slogans or the
issuance of assurances concerning the safety of patrons may
expose a franchisor to liability for criminal activity by a franchisee
or criminal activity on or near the franchised premises.   *See
Franchisor's Tort Liability for Injuries Allegedly Caused by
Assault or Other Criminal Activity on or Near Franchise Prem-
ises,* 2 *A.L.R.* 5th 369 (1992).

The Court has addressed, however, the liability of the owner of
a network of auto dealerships for sexual harassment of an employ-
ee.   In *Tarr v. Ciasulli,* 181 *N.J.* 70, 853 *A.*2d 921 (2004), a woman
employed as a finance and insurance manager by an auto dealer
brought a hostile work environment claim against her direct
employer, the corporate group of auto dealerships, and the individ-
ual owner of all of the network of dealerships.   At trial, the judge
dismissed the claims against the individual owner.   *Id.* at 73, 853
*A.*2d 921.   The claim against the individual owner was predicated
on a theory that he had aided and abetted the sexual harassment
about which plaintiff complained.   *Id.* at 83, 853 *A.*2d 921.

█   It is unlawful under the LAD, whether or not a person is
an employer or employee, to aid or abet any of the acts forbidden
by the LAD.   *N.J.S.A.* 10:5–12e.   Applying the principles govern-
ing concert liability set forth in section 876(b) comment d of the

---

[2] *Connolly v. Burger King Corp.,* 306 *N.J.Super.* 344, 703 *A.*2d 941 (App.Div.
1997) is not apposite.   First, the opinion concerns only a discovery dispute.
More importantly, the franchisor was a defendant because one of its employees
was accused of sexually harassing a female employee at one of the franchises
during the franchisor's periodic inspection and training sessions.   *Id.* at 346, 703
*A.*2d 941.

*Restatement (Second) of Torts,* the Court identified five factors to determine whether a defendant provided substantial assistance to the principal actor: "(1) the nature of the act encouraged, (2) the amount of assistance given by the supervisor, (3) whether the supervisor was present at the time of the asserted harassment, (4) the supervisor's relations to the others, and (5) the state of mind of the supervisor." *Tarr, supra,* 181 *N.J.* at 84, 853 *A.*2d 921. Ultimately, the Court found that the evidence was inadequate to impose liability on the individual owner of the network of auto dealerships. Justice Wallace wrote:

> There was no evidence that Ciasulli encouraged any of the wrongful conduct against plaintiff, that he assisted the wrongdoers, or that he was even present when the wrongful conduct occurred. At best, the record discloses that Ciasulli, as the supervisor in the network of auto dealerships, negligently supervised his employees. That is insufficient to conclude that he provided substantial assistance to the wrongdoers to impose individual liability under *N.J.S.A.* 10:5–12e.

[*Id.* at 85, 853 *A.*2d 921.]

*Tarr* is instructive to us in the franchise context because it does not confine our consideration to whether a franchisor may be considered an employer and directs our attention to whether the franchisor may be considered an aider or abettor. The focus on aiding or abetting also indicates that liability will not turn on the passive status of franchisor.

Viewing the facts in the light most favorable to plaintiff, we find that A., Inc.'s role as franchisor does not allow imposition of liability, direct or vicarious, under the LAD. Neither D.T. nor A., Inc. owned the franchise operated by defendant A.M.P. D.T., as the owner of A., Inc., conducted monthly members meetings, but provided little or no guidance on the day-to-day operations of the franchises. D.T. and his wife were members of the board that issued black belts to qualifying students from all franchises. D.T. provided marketing and sales guidance to franchisees but franchisees were not required to use a pre-packaged marketing plan or contribute to a marketing plan devised by A., Inc. Each franchise was required to carry franchise branded merchandise at each site.

Neither D.T. nor A., Inc. had any role in hiring or terminating employees or any other personnel issues at any franchise. Each franchise was individually owned and operated as an individual business.

■ D.T. did observe plaintiff sitting on A.M.P.'s lap on one occasion; yet A.M.P.'s niece was sitting on his lap at the same time. D.T. thought A.M.P.'s actions were inappropriate, but there was no suggestion that A.M.P.'s actions were indicative of a sexual relationship with plaintiff. When D.T. was informed in late December 1999 or early January 2000 by an employee of A.M.P.'s franchise that the relationship was sexual, D.T. spoke to the source of the complaint and met immediately with A.M.P., who denied any impropriety. Nevertheless, D.T. consulted an attorney and sent A.M.P. a letter warning him about the allegations of impropriety and requesting his cooperation in an investigation. The letter closed with a threat to terminate the franchise. Soon thereafter, plaintiff left A.M.P.'s employ, the relationship ceased, and A.M.P. was arrested.

These facts do not support a finding that D.T. was plaintiff's employer or direct supervisor or A.M.P.'s employer or direct supervisor or that he aided or abetted the actions of A.M.P. A rational factfinder could not find that D.T. or A., Inc. had actual knowledge of the relationship between plaintiff and A.M.P. or that D.T. and A., Inc. had a basis to form a reasonable suspicion of an illicit relationship before late December 1999.

■ Moreover, the relationship between S., Inc., the franchisee, and A., Inc., the franchisor, does not evince the degree of control that would warrant the imposition of vicarious liability under agency principles or liability as an aider or abettor. There is no evidence that A., Inc, compelled, coerced, encouraged or assisted the formation and maintenance of the illicit relationship.

Accordingly, we affirm the order granting summary judgment, although in doing so, we reject the notion that a minor may consent to or welcome the prohibited conduct. We affirm because

the facts, viewed in the light most favorable to plaintiff, do not allow a finding that D.T. or A., Inc. were plaintiff's employer or direct supervisor, or A.M.P.'s employer or direct supervisor, or that either aided or abetted A.M.P.'s actions, or that their status as franchisor exposed them to liability on account of A.M.P.'s actions.

Affirmed.