**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3913-23

DEWAN N. AREFIN,

    Plaintiff-Appellant,

v.

THE DOHERTY GROUP, INC.,
d/b/a DOHERTY ENTERPRISES,
KENNETH BELVIN, personally
and professionally, KATHLEEN
COUGHLIN, personally and
professionally, EDWARD
DOHERTY, personally and
professionally, TIMOTHY
DOHERTY, personally and
professionally, DINE BRANDS
GLOBAL INC., APPLEBEE'S
RESTAURANTS LLC, and
APPLEBEE'S SERVICES, INC.,

    Defendants-Respondents.

_____

Submitted October 16, 2025 – Decided November 18, 2025

Before Judges Smith and Berdote Byrne.

On appeal from the Superior Court of New Jersey, Law Division, Middlesex County, Docket No. L-6678-23.

Dewan N. Arefin, appellant pro se.

Saul Ewing LLP, attorneys for respondents (Erik P. Pramschufer, Ruth A. Rauls, and Ryan E. Gallagher, on the brief).

PER CURIAM

Plaintiff, Dewan N. Arefin, appeals from the trial court's order dismissing with prejudice his sixth amended complaint against Dine Brands Global, Inc., Applebee's Restaurants LLC, Applebee's Services, Inc. (the Franchisors); and Edward Doherty, Timothy Doherty, and Kathleen Coughlin (the Doherty Officers). Plaintiff, a longtime patron of an Applebee's restaurant operated by Doherty Enterprises in Piscataway, alleges a series of claims arising from an incident involving the kitchen manager. The claims included public accommodation discrimination and retaliation pursuant to the New Jersey Law Against Discrimination (LAD), assault, aiding and abetting discrimination, fraud, negligence, and breach of contract. The trial court dismissed all claims against defendants, most with prejudice, finding the pleadings lacked legal and factual support to establish a duty beyond the operating franchisee and the individual manager involved in the incident.

On appeal, plaintiff asserts the trial court erred by dismissing his claims with prejudice. We affirm substantially for the reasons set forth in Judge Bina

Desai's well-reasoned oral opinion. We conclude that the pleadings do not allege conduct, knowledge, or involvement sufficient to impose liability pursuant to the LAD, N.J.S.A. 10:5-1 to -50, the Consumer Fraud Act (CFA), N.J.S.A. 56:8-1 to -227, or the common-law causes of action. Having reviewed the record de novo, we agree with Judge Desai's reasoning and add the following comments.

We consider a trial court's decision to dismiss a complaint for failure to state a claim pursuant to Rule 4:6-2(e) de novo, reviewing the complaint in the same manner as the motion judge. Guzman v. M. Teixeira Int'l, Inc., 476 N.J. Super. 64, 69 (App. Div. 2023). "'At this preliminary stage of the litigation[,]' we are 'not concerned with the ability of plaintiff[] to prove the allegation contained in the complaint.'" Ibid. (first alteration in original) (quoting Printing Mart-Morristown v. Sharp Elecs. Corp., 116 N.J. 739, 746 (1989)). Despite this leniency, "we will affirm the dismissal of a 'complaint if it has failed to articulate a legal basis entitling plaintiff to relief.'" Id. at 70 (quoting Sickles v. Cabot Corp., 379 N.J. Super. 100, 106 (App. Div. 2005)). And, although, "[o]rdinarily, dismissal for failure to state a claim is without prejudice," Cona v. Twp. of Washington, 456 N.J. Super. 197, 214 (App. Div. 2018), "there are times when a dismissal with prejudice is mandated, such as when the facts are 'palpably

3

insufficient to support a claim upon which relief can be granted' and when 'discovery will not give rise to' a successful claim." Big Smoke LLC v. Twp. of West Milford, 478 N.J. Super. 203, 226 (App. Div. 2024) (quoting Mac Prop. Grp. LLC v. Selective Fire & Cas. Ins. Co., 473 N.J. Super. 1, 17 (App. Div. 2022)).

Following an altercation with the kitchen manager of the Applebee's he frequented, plaintiff filed an initial complaint. Later, plaintiff filed a sixth amended complaint, alleging public accommodation discrimination and retaliation pursuant to the LAD (Count I), assault (Count II), aiding and abetting unlawful discrimination (Count III), fraud (Count IV), negligence (Count V), and breach of contract (Count VI).

Defendants moved to partially dismiss the sixth amended complaint pursuant to Rule 4:6-2(e). The Franchisors and Doherty Officers moved to dismiss all counts. Doherty Enterprises and the kitchen manager, respectively, moved to dismiss counts II, IV, V, and VI; and IV, V, and VI. The trial court granted defendants' motion in part, as follows:

- Plaintiff's claims for violations of the LAD (Count I), fraud (Count IV), negligence (Count V), and breach of contract (Count VI), were

4

dismissed with prejudice against the Franchisors and Doherty Officers.

- Plaintiff's claim for assault (Count II) was dismissed without prejudice against the Franchisors and Doherty Officers;

- Plaintiff's claim for LAD aiding and abetting liability (Count III) was dismissed with prejudice against the Franchisors, Edward Doherty, and Timothy Doherty; and

- Plaintiff's claim for LAD aiding and abetting liability (Count III) was dismissed without prejudice against Kathleen Coughlin.[1]

In dismissing the LAD public accommodation claims, the trial court <u>found</u> there was "not sufficient information in the complaint to suggest [Franchisors] own, operate, lease, [or] manage the restaurant, rather than just licensing trademarks and other rights for [the] Doherty franchisees who themselves own and operate the restaurant under the Applebee's trademark." The court further found, "plaintiff's complaint does not allege how the Doherty officers [engaged] in discriminatory conduct" or even participated in the incident or the decision to ban plaintiff. The trial court also found that simply holding a position as a

---

[1] Plaintiff went on to file two more amended complaints. On July 26, 2024, the court, upon plaintiff's motion, dismissed all remaining claims.

5

company officer does not establish personal responsibility for alleged discrimination when the complaint contains no allegations of personal conduct or involvement beyond corporate titles. We agree. The Franchisors did not own, operate, or manage the restaurant, and plaintiff did not allege the Franchisors or the Doherty Officers participated in any of the alleged discriminatory acts.

When interpreting statutory language, we "aim[] to effectuate the Legislature's intent." W.S. v. Hildreth, 252 N.J. 506, 518-19 (2023). The "'best indicator' of legislative intent 'is the statutory language.'" Id. at 519 (quoting State v. Lane, 251 N.J. 84, 94 (2022)). We "ascribe to the statutory words their ordinary meaning and significance and read them in context with related provisions so as to give sense to the legislation as a whole." DiProspero v. Penn, 183 N.J. 477, 492 (2005) (citation omitted). "If the Legislature's intent is clear from the statutory language and its context with related provisions, we apply the law as written." Shelton v. Restaurant.com, Inc., 214 N.J. 419, 429 (2013).

Based on the statutory language, regulatory framework, and case law, N.J.S.A. 10:5-12(f)(1) does not apply to franchisors unless they directly own, lease, or operate the place of public accommodation in question. The plain language of N.J.S.A. 10:5-12(f)(1) extensively lists who may be held liable for

6

discrimination, but does not mention franchisors. The Legislature did not intend for franchisors to be subject to N.J.S.A. 10:5-12(f)(1) unless they directly own or operate the place of public accommodation.

In addition, we have explained whether a franchisor may be held liable pursuant to the LAD depends on agency principles, including "[t]he degree of control[] [and] the actual exercise of control" the franchisor has over the franchisee. J.M.L. ex rel. T.G. v. A.M.P., 379 N.J. Super. 142, 150 (App. Div. 2005). There we concluded the defendants' "role as franchisor does not allow imposition of liability, direct or vicarious, under the LAD," because although defendants conducted monthly members meetings and provided marketing and sales guidance to franchisees, they provided "little or no guidance on the day-to-day operations of the franchises" and had no role "in hiring or terminating employees or any other personnel issues at any franchise." Id. at 151-52. Plaintiff did not allege any facts in his complaint indicating the Franchisors exercised this degree of control. Accordingly, they cannot be held liable for the alleged discrimination.

Likewise, in dismissing the aiding and abetting claims, Judge Desai found the complaint pleaded only general allegations, included no specific description of acts or knowledge by the Franchisors, Edward Doherty, or Timothy Doherty,

and omitted any facts indicating "knowledge" of or "substantial assistance" in the alleged wrongdoing. Regarding Coughlin, the trial court found her position as Chief People Officer and involvement in human resources might differentiate her from the other officers, stating she "may have been ultimately part of the decision to ban plaintiff from the restaurant, but her involvement in the decision does not give rise to an inference that it was done on the basis of discrimination." For vicarious liability relating to assault, the court found the complaint did not allege the Franchisors or the Doherty Officers had an employment or agency relationship with the kitchen manager or exercised control over him during the relevant period.

We again agree with the trial court. N.J.S.A. 10:5-12(e) makes it illegal "[f]or any person, whether an employer or not, to aid[] [or] abet . . . the doing of any of the acts forbidden under this act, or to attempt to do so." A plaintiff proves aiding and abetting against an employer by showing:

> (1) the party whom the defendant aids must perform a wrongful act that causes an injury; (2) the defendant must be generally aware of his [or her] role as part of an overall illegal or tortious activity at the time that he [or she] provides the assistance; [and] (3) the defendant must knowingly and substantially assist the principal violation.

A-3913-23

[Tarr v. Ciasulli, 181 N.J. 70, 84 (2004) (third alteration in original) (quoting Hurley v. Atl. City Police Dep't, 174 F.3d 95, 127 (3d Cir. 1999)).]

A claim for aiding and abetting "require[s] active and purposeful conduct." Id. at 83. Aiding and abetting liability focuses on "whether a defendant knowingly gave substantial assistance to someone engaged in wrongful conduct, not on whether the defendant agreed to join the wrongful conduct." Podias v. Mairs, 394 N.J. Super. 338, 353 (App. Div. 2007) (emphasis and internal quotation marks omitted).

Plaintiff's complaint provides no indication that the Franchisors, Edward Doherty, or Timothy Doherty had any knowledge of, much less substantially assisted in, the alleged discrimination. Plaintiff's complaint included only general allegations and lacked descriptions of any conduct as to those parties. As the trial court explained, the only party who may have been involved in the decision to ban plaintiff from the restaurant is Coughlin based on her position as Chief People Officer and involvement in human resources, which is why the trial court dismissed the aiding and abetting claims against her without prejudice.

In dismissing the statutory and common-law fraud claims, the court reasoned advertisements depicting Applebee's as a "neighborhood" restaurant

9

could not amount to "actionable misrepresentations," and the complaint did not allege ascertainable loss or a causal relationship between conduct and damages. When a plaintiff alleges fraud, a heightened standard applies to the pleading pursuant to Rule 4:5-8(a): "In all allegations of misrepresentation, fraud, mistake, breach of trust, willful default or undue influence, particulars of the wrong, with dates and items if necessary, shall be stated insofar as practicable. Malice, intent, knowledge, and other condition of mind of a person may be alleged generally."

A common-law fraud claim requires the complaint to allege specific facts which, if proven, would establish the following elements: (1) a representation or omission of a material fact; (2) made with knowledge of its falsity; (3) made with the intention that the representation or omission be relied upon; (4) reasonable reliance on the representation or omission; and (5) damages. DepoLink Ct. Reporting & Litig. Support Servs. v. Rochman, 430 N.J. Super. 325, 336 (App. Div. 2013). In Hoffman v. Hampshire Labs, Inc., 405 N.J. Super. 105, 114-16 (App. Div. 2009), we affirmed the trial court's order dismissing the plaintiff's complaint for failure to state a claim pursuant to the CFA and common-law fraud. The plaintiff alleged the defendants' promises in a product advertisement were false, deceptive, and misleading but did not "plead sufficient

facts which would establish that he . . . detrimentally relied upon [the] defendants' representations or suffered some monetary loss as a result of such reliance." Id. at 116.

"To prevail on a CFA claim, a plaintiff must establish three elements:  '1) unlawful conduct by defendant; 2) an ascertainable loss by plaintiff; and 3) a causal relationship between the unlawful conduct and the ascertainable loss.'" Zaman v. Felton, 219 N.J. 199, 222 (2014) (quoting Bosland v. Warnock Dodge, Inc., 197 N.J. 543, 557 (2009)).  An unlawful practice is defined by the CFA as:

> The act, use or employment by any person of any commercial practice that is unconscionable or abusive, deception, fraud, false pretense, false promise, misrepresentation, or the knowing, concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise or real estate, or with the subsequent performance of such person as aforesaid, whether or not any person has in fact been misled, deceived or damaged . . . .
>
> [N.J.S.A. 56:8-2.]

Furthermore, an "ascertainable loss" requires the plaintiff to "suffer a definite, certain and measurable loss, rather than one that is merely theoretical." Bosland, 197 N.J. at 558.

Plaintiff did not sufficiently plead any element of common law fraud in the complaint with the specificity required by the heightened pleading standard set forth in Rule 4:5-8(a). Plaintiff's complaint merely stated general allegations with no specific descriptions of any conduct by the Franchisors and the Doherty Officers. Consequently, plaintiff's complaint did not set forth facts alleging any unlawful actions by the Franchisors or Doherty Officers, the presence of an ascertainable loss, or a causal relationship between the conduct and the loss. Furthermore, an advertisement generally stating Applebee's is a "neighborhood restaurant" is "puffery" that is not actionable pursuant to the CFA. See Rodio v. Smith, 123 N.J. 345, 352 (1991) (holding insurer's slogan, "You're in good hands with Allstate" was not "a deception, false promise, misrepresentation, or any other unlawful practice" pursuant to the CFA but only "puffery").

For negligence, the court found no allegations showing the Franchisors, Doherty Enterprises, or the Doherty Officers employed the kitchen manager or knew of any particular unfitness, incompetence, or dangerous traits, and thus no basis for a duty or breach of duty was pleaded. To establish a party acted negligently, a plaintiff must present evidence establishing "a duty of care owed by the defendant to the plaintiff, a breach of that duty by the defendant, injury to the plaintiff proximately caused by the breach, and damages." Robinson v.

12

Vivirito, 217 N.J. 199, 208 (2014). "Unlike respondeat superior, negligent hiring, supervision, and training are not forms of vicarious liability and are based on the direct fault of an employer." G.A.-H. v. K.G.G., 238 N.J. 401, 415 (2019). The tort of negligent hiring has two fundamental requirements. Id. at 416.

The plaintiff first must show, irrespective of whether the employee was acting within the scope of his or her employment:

> (1) that the employer "knew or had reason to know of the particular unfitness, incompetence or dangerous attributes of the employee and could reasonably have foreseen that such qualities created a risk of harm to other persons" and (2) "that, through the negligence of the employer in hiring the employee, the latter's incompetence, unfitness or dangerous characteristics proximately caused the injury."
>
> [Ibid. (quoting Di Cosala v. Kay, 91 N.J. 159, 173 (1982)).]

The tort of negligent supervision or training similarly requires that the employer "knew or had reason to know that the failure to supervise or train an employee in a certain way would create a risk of harm" and the "risk of harm materializes and cause[d] the plaintiff's damages." Ibid.

The negligent hiring and supervision analysis is straightforward as to the Franchisors because the kitchen manager was not their employee. As to the

Doherty Officers, plaintiff did not allege they personally hired him or supervised him. Nevertheless, there are no facts in plaintiff's complaint to suggest either the Franchisors or the Doherty Officers knew of any unfitness, incompetence, or dangerous attributes the kitchen manager may have possessed.

Finally, in dismissing the breach-of-contract claim, the court found the complaint did not plead facts suggesting the existence of a contract between plaintiff and the Franchisors or the Doherty Officers; thus, the court held there was no basis to allege breach of contract or implied covenant of good faith and fair dealing.

Plaintiff asserts a valid implied-in-fact contract existed for nondiscriminatory service and argues defendants breached the contract and covenant of good faith and fair dealing by banning him from the restaurant. This is a frivolous argument. Plaintiff did not allege facts in his complaint to suggest he entered into a contract with any of the defendants. See Nelson v. Elizabeth Bd. of Educ., 466 N.J. Super. 325, 342 (App. Div. 2021) ("To establish a claim for breach of contract, a plaintiff must provide proof of 'a valid contract between the parties, the opposing party's failure to perform a defined obligation under the contract, and a breach causing the claimant to sustain[] damages.'" (quoting

EnviroFinance Grp., LLC v. Env't Barrier Co., 440 N.J. Super. 325, 345 (App. Div. 2015))).

Even if there had been an implied-in-fact contract, plaintiff cannot claim the thousands of dollars he previously spent at the restaurant, for which he received proper food and drink without complaint, as damages. See ibid. ("[A] breaching party 'is liable for all of the natural and probable consequences of the breach of that contract.'" (quoting Totaro, Duffy, Cannova & Co. v. Lane, Middleton & Co., 191 N.J. 1, 13 (2007))). Furthermore, because there was no alleged contract between plaintiff and any of the defendants, plaintiff's claim of a breach of the implied covenant of good faith and fair dealing likewise fails. See Cumberland Farms, Inc. v. N.J. Dep't of Env't Prot., 447 N.J. Super. 423, 443 (App. Div. 2016) ("It is well established . . . that '[i]n the absence of a contract, there can be no breach of an implied covenant of good faith and fair dealing.'" (alteration in original) (quoting Noye v. Hoffmann–La Roche Inc., 238 N.J. Super. 430, 434 (App. Div. 1990))).

In sum, having reviewed the record in light of all applicable legal principles, we conclude Judge Desai's legal reasoning in her detailed opinion is correct and her conclusions are unassailable.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

M.C. Harley

Clerk of the Appellate Division

A-3913-23